UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) 2:10-CR-74 |
| | ) JUDGE GREER |
| ASHLEA MELYNDA LAUGHLIN | ) |

PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, ASHLEA MELYNDA LAUGHLIN, and the defendant's attorney, Wayne Stambaugh, have agreed upon the following:

1. The defendant will plead guilty to the following count in the indictment:

   a) Count Two. Kidnapping in violation of 18 U.S.C. § 1201. The punishment for for this offense is as follows. A minimum term of imprisonment of twenty years and a maximum term of imprisonment of life, in accordance with Title 18, United States Code § 1201(g)(1)(A); a maximum fine of $250,000; a minimum term of five years supervised release and a maximum term of life supervised release pursuant to Title 18, United States Code §3583(k); and a $100 special mandatory assessment.

2. The defendant has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crime charged. The defendant is pleading guilty because the defendant is in fact guilty.

3. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other

facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

The defendant is a native and resident of Greene County, Tennessee. The defendant met the co-defendant David Clifton Jackson in 2009. During 2010, the defendant became involved with David Clifton Jackson, who provided illegal drugs to the defendant. The defendant accompanied Jackson and others on trips from Greeneville, Tennessee to locations in the State of Florida for the purpose of procuring illegal drugs and transporting them to Greene County, Tennessee. Although the defendant had a substantial drug problem prior to her involvement with Jackson, Jackson provided the defendant with illegal drugs.

During the month of June 2010, JACKSON, the defendant, and others drove from Greeneville to New Port Richey, Florida and returned to Greene County, Tennessee on or about July 7, 2010. Jackson is the father of a minor male child whose initials are D.K.B. Jackson did not have custodial rights in the child D.K.B. On July 10, 2010, the mother of D.K.B. allowed the child to visit with Jackson for one night, believing that Jackson's sister was present in Jackson's home. The maternal grandmother of D.K.B. brought D.K.B to Jackson, Stumbo, and the defendant. JACKSON took D.K.B. to the Asheville Highway home, where he and two others were living. The mother of D.K.B. agreed to JACKSON's request to extend the visitation and Jackson agreed to return D.K.B. on Sunday, July 11, 2010.

On Sunday, July 11, 2010, JACKSON telephoned the mother of D.K.B. and told her he decided to keep his son, against the mother's wishes and without her permission. He told her he intended to take the child to Atlanta, Georgia. The mother disagreed and then drove to 8495 Asheville Highway. When the mother arrived at approximately 3:45 p.m., she saw that D.K.B.'s personal effects (including his diaper bag) had been placed in the trunk of a white Chrysler Sebring.

2

Jackson directed the defendant and two others to place D.K.B. in the Sebring, cursed the mother of D.K.B., and told the defendant and the two others to leave the house with the baby in the car. In an attempt to retrieve her child, the mother tried to open the doors of the Sebring. The defendant was in the back seat of the Sebring, seated with D.K.B., who was in a child car seat. At the direction of Jackson, Brooke Stumbo drove the Sebring away from the residence. The defendant, Brooke Stumbo, another person, and D.K.B. were in the Sebring. After threatening the mother with a large rock which he brandished at her, Jackson jumped in the mother's car (a Dodge Intrepid), threw her cellular phone in a ditch, and drove away from the residence.

The defendant rode in the Sebring from Greeneville, Tennessee through North Carolina to South Carolina. At that time, D.K.B. was seated in a child seat in the back seat of the Sebring. The defendant knowingly and willfully confined and carried away D.K.B., a minor who had not attained the age of eighteen years. The defendant was not related to D.K.B. by family or marriage and was not his legal custodian. D.K.B. lacked the legal capacity to consent to his confinement and carrying away. The defendant transported D.K.B. in interstate commerce using the interstate highway system, traveling from Tennessee to North Carolina and then to South Carolina. The defendant began driving the Sebring in Newberry, South Carolina and drove the Sebring until they reached their destination in Miami, Florida. The defendant confined, carried away, and held D.K.B. for her personal benefit and because Jackson directed her to do so. In Newberry, South Carolina, Jackson entered the Sebring and Jackson, the defendant and the rest of its occupants drove to Miami, Florida, where they arrived on July 12, 2010. Jackson threatened to kill the defendant's child on numerous occasions.

4. The defendant understands that by pleading guilty the defendant is giving up several rights, including:

3

a) the right to plead not guilty;

b) the right to a speedy and public trial by jury;

c) the right to assistance of counsel at trial;

d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

e) the right to confront and cross-examine witnesses against the defendant;

f) the right to testify on one's own behalf, to present evidence in opposition to the charges and to compel the attendance of witnesses; and

g) the right not to testify and to have that choice not used against the defendant.

5. The parties agree that the appropriate disposition of this case would be the following as to each count:

a) The Court may impose any lawful term of imprisonment, any lawful fine, and any lawful term of supervised release up to the statutory maximum;

b) The Court will impose special assessment fees as required by law; and

c) The Court may order forfeiture as applicable and restitution as appropriate.

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea. The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the

4

defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

6. The defendant further agrees to cooperate fully, completely, and truthfully with any and all law enforcement agents and personnel of the United States Attorney's Office. This cooperation includes, but is not limited to, meeting with and being interviewed by such law enforcement agents or personnel of the United States Attorney's Office whenever requested. The defendant further agrees not to protect anyone who was truly involved and not to falsely implicate anyone who was not truly involved in the commission of criminal offenses. The defendant further agrees to testify completely and truthfully before a federal grand jury, at any trial, or at any other proceeding if called upon by the United States to do so. Upon request by the United States, the defendant must furnish all documents, objects and other evidence in the defendant's possession, custody, or control that are relevant to the United States' inquiries. The defendant and defense counsel also knowingly, voluntarily, and intentionally waive the defendant's right (where applicable) to have defense counsel present during the course of cooperation, including questioning or court appearances.

7. To ensure the defendant's truthful cooperation, the United States agrees, except as provided below, not to use any self-incriminating information provided by the defendant pursuant to this written plea agreement against the defendant. However, nothing in this plea agreement shall restrict the use of any information (1) known to the United States prior to entering into this written plea agreement, (2) obtained from any other source, or (3) concerning the defendant's prior criminal record. Should any of the following occur (1) the defendant provides false or misleading information during the course of the defendant's cooperation, (2) the defendant moves to withdraw the defendant's guilty plea, or (3) the defendant breaches any other of the terms of this plea agreement, then the United States may make use of any information provided by the defendant to

5

law enforcement authorities at any time (including any information provided during formal or informal proffer sessions prior to signing this plea agreement, and any information provided after signing this plea agreement) for any purpose in any subsequent proceeding, including grand jury, trial, and sentencing phases of this case or in any other prosecutions or proceedings against the defendant or others. Moreover, if the United States determines at any time (before or after sentencing) that the defendant has failed to cooperate fully, completely, and truthfully, or otherwise violated any of the terms of this plea agreement, it will be free to withdraw any favorable sentencing motion filed by the United States, including motions filed under U.S.S.G. § 5K1.1 and/or 18 U.S.C. § 3553.

8. At the time of sentencing, the United States may bring to the Court's attention the nature, extent, and value of the defendant's cooperation so that it may be considered in determining a fair and appropriate sentence under the facts of the case.

9. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense, including violations of conditions of release or the commission of additional offenses prior to sentencing, the United States will be free not to make such motion or to withdraw such motion if already made, and will be free to recommend to the Court that the defendant not

6

Case 2:10-cr-00074-JRG-MCLC Document 50 Filed 01/13/11 Page 6 of 9 PageID #: 184

receive any offense level reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

10. The defendant agrees to pay the special assessment in this case prior to sentencing.

11. Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel.

In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

    a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

12. (a) In consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offense committed, the defendant agrees not to file a direct appeal of the defendant's conviction or sentence except the defendant retains the right to appeal a sentence imposed above the sentencing guideline range or any applicable mandatory minimum sentence (whichever is greater) determined by the district court.

(b) In addition, the defendant knowingly and voluntarily waives the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to collaterally attack the defendant's conviction(s) and/or resulting sentence. The parties agree that the defendant retains the right to raise, by way of collateral review under § 2255, claims of ineffective assistance of counsel or prosecutorial misconduct not known to the defendant by the time of the entry of judgment.

13. This agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this agreement in any way (including but not limited to failing to enter guilty plea as agreed herein, moving to withdraw guilty plea after entry, or by violating any court order or any local, state

8

or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or statutory speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea in this case.

15. This plea agreement constitutes the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge, and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

WILLIAM C. KILLIAN
UNITED STATES ATTORNEY

1-13-2011
Date

By: Helen Smith
Helen C.T. Smith
Assistant United States Attorney

1-5-11
Date

ASHLEA MELYNDA LAUGHLIN
Defendant

1/5/11
Date

Wayne Stambaugh
Attorney for the Defendant

9