IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | No. 2:10-CR-74-002 |
| | ) | (GREER) |
| v. | ) | |
| | ) | |
| ASHLEA M. LAUGHLIN | ) | |
| Defendant. | ) | |

## SENTENCING MEMORANDUM

Comes now the Defendant, Ashlea M. Laughlin, by and through counsel, Wayne Stambaugh, and hereby moves this Honorable court that pursuant to *U.S. v. Booker,* S. Ct. 738 (2005) the court conduct a hearing to properly determine the defendant's sentence and in support submits the following memorandum of law in support:

**INTRODUCTION**:

Ms. Laughlin plead guilty to count two of the indictment which is Kidnaping, Title 18 U.S.C. Section 1201; a class A Felony. Based upon a total offense level of 29, USSG Section Chapter 5, Part A, and a criminal history category of III, Ms. Laughlin's guideline range for imprisonment is 108-135 months. Also, Ms. Laughlin faces a minimum term of imprisonment of 20 years. USSG Section 5C1.1(f) states that the applicable minimum guideline range for Zone D of the sentencing table shall be satisfied by a sentence of imprisonment.

Ms. Laughlin was arrested on July 13, 2010 in the Southern District of Florida and has been in the custody of the United States Marshall Service since that time. Federal Custody on February 10, 2010. Ms. Laughlin has never been married but has a son named Gage Adams. Although it is the

information and belief of the defendant that the United States of America will file a Motion for Departure pursuant to U.S.S.G. 5K1.1, and 18 U.S.C. Section 3553(e) which will allow this Honorable Court to have the authority to impose a sentence below a level established by a statute as a minimum sentence, it is unknown as tho whether the Government's recommendation will adequately reflect the defendant's cooperation and substantial assistance in the prosecution of David Jackson.

**POST BOOKER SENTENCING**:

In *Booker*, the United States Supreme Court struck down the federal Sentencing Guidelines as unconstitutional under the Sixth Amendment of the United States Constitution as construed in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). The Court reasoned that Sentencing Guidelines violate the Sixth Amendment because the guidelines authorize a sentence based on a sentencing judge's determinations of facts neither found by a jury or admitted by the defendant. The Court explained that the Sixth Amendment would not be implicated if the Guidelines as currently written recommended rather than required the selection of particular sentences in response to differing sets of facts. *Booker*, 125 S. Ct. 738 (2005).

The district court in Booker's case imposed a sentence within the applicable guideline range (360 months to life) which was higher than the maximum authorized solely by the jury's verdict (210 to 262 months). In United States v. Fanfan _____,S. Ct. ___, the district court applying *Blakely* refused to impose a sentence within the higher guideline range (188 to 235 months) and instead imposed a 78-month sentence which was the maximum authorized by the jury's verdict. Only in Booker's case did the Supreme Court find a Sixth Amendment violation, requiring a remand to impose a sentence under an indeterminate sentencing scheme. The Supreme Court found no Sixth

Amendment violation with respect to Fanfan's sentence but nonetheless remanded the case and gave the government and the defendant the option of seeking re-sentencing under the system set forth in the opinion.

The Court determined that the appropriate remedy for the Sixth Amendment violation would be to sever and excise from the Federal Sentencing Reform Act of 1984 the provisions which make the federal Sentencing Guidelines mandatory, 18 U.S.C. §§ 3553(b)(1) and 3742(e). "So modified, the Federal Sentencing Act makes the Guidelines effectively advisory. It requires a sentencing court to consider Guidelines ranges, but it permits the court to tailor the sentence in light of the other statutory concerns as well." *Booker*, 125 S.Ct. 738 (2005).

In *Kimbrough v. United States,* _____ 128 S.Ct. 558, 575 (2007), the Supreme Court upheld the "district court's decision to sentence substantially below the advisory guidelines range to mitigate the disparity between the crack and powder cocaine guidelines, *Id.* Explaining that the Commission had failed to "take account of empirical data and national experience" when first formulating the crack/powder guidelines and had itself reported that the "disparity produce(d) disproportionately harsh sanctions" inconsistent with § 3553(a), the Supreme Court concluded that the sentencing court did *not* abuse its discretion in refusing to implement the disparity. *Id.*

Furthermore*,* in *United States v. Gardellini*, 545 F. 3d 1089, 2008 WL 4889971, the district court sentenced the defendant to five years probation after the defendant had been determined by the United States Probation office to have a guideline range of 10-16 months. The United States Attorney General's Office appealed stating that they believed to impose such a lenient punishment would lessen the deterrence effect of those who provide false information to the Government. The D.C. Circuit upheld the district court's decision to punish the defendant well below the guideline range stating "both the Government and defense counsel should be well-advised to understand that

it will be an unusual case where an appeals court overturns a sentence as substantively unreasonable as the post-Rita, post Gall case law in the court of appeals shows>" Id. At 5, (citing *Rita v. United States,* 127 S. Ct. 2456 (June 21, 2007).

Accordingly, this Honorable Court will now be required to decide what sentence is reasonable under an indeterminate sentencing scheme requiring courts to considering the factors set forth in 18 U.S.C. § 3553(a), considering in an advisory rather than mandatory manner the applicable guideline range under the federal Sentencing Guidelines. Title 18, U.S.C. § 3553(a) requires a sentencing court to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> © to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
>>
>>> (I) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines

> > by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>
> > (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
>
> (B) . . . .
>
> (5) any pertinent policy statement;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

The overriding principle and basic mandate of § 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the four purposes of sentencing (as restated in § 3553(a)(2)):

> (a) retribution (to reflect the seriousness of the offense, to promote respect for the law, and to provide "just punishment");
>
> (b) deterrence;
>
> (c) incapacitation ("to protect the public from further crimes"); and
>
> (d) rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").

Under 18 U.S.C. Section 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of a defendant which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." (EMPHASIS ADDED). This

statutory language certainly overrides the now-advisory policy statements of Part H of the Sentencing Guidelines, which list as "not ordinarily relevant to sentencing, factors such as defendant's age, education, vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. Ms. Laughlin believes those factors may be considered as ordinarily relevant.

**FACTORS THAT WARRANT DEPARTURE**:

Due to the explicit and graphic nature of the evidence and/or testimony to be presented to this Honorable Court by the defendant on her sentencing date, it would be inappropriate to review all relevant evidence and/or testimony in a written sentencing memorandum.

**(1) the nature and circumstances of the offense and the history and characteristics of the defendant**;

Ms. Laughlin understands, acknowledges, and accepts full responsibility that she was involved in a serious crime that had a direct effect on the minor child D.K.B., as well as the child's mother. Ms. Laughlin's prior criminal history is made up of non-violent offenses. Ms. Laughlin would also state that she had a limited, though not a minor role in the offense. *United State v. Pauley*, 511 F. 3d 468 (4th Cir. 2007). Furthermore, the defendant would state that her conduct in the offense was aberrant. U.S.S.G. Section 5K2.20. Ms. Laughlin would state that there was no significant planning for the Kidnaping, that her involvement was for a limited duration, and the her involvement represented a marked deviation from her past behavior. *United States v. Carson*, 560 F. 3d 566 (6th Cir. 2009). Moreover, Ms. Laughlin would state that during the entire episode with co-defendant David Jackson that she was under extreme duress. Mr. Jackson threatened to kill both the

defendant and her minor child on numerous occasions. *United States v. Jurado-Lopez*, 338 F. Supp. 2d 246 (D. Mass. 2004).

Ms. Laughlin has been abusing illegal drugs since she was 15 years old. Ms. Laughlin was involved in an automobile accident on June 1, 2006 that left her in poor physical health and emotionally traumatized. She is currently prescribed hydrochlorothiazide for her high blood pressure. Ms. Laughlin has suffered from numerous medical issues since her incarceration and currently fears the possibility of another stroke or heart attack. Ms. Laughlin would advocate that her poor physical and mental health, as well as her need for medical care, would warrant a deviation from her guideline range. *United States v. Alemenas*, 553 F. 3d 27 (1st. Cir. 2009), *United States v. Seiber*, 2005 WL 1801614 9 E.D. July 29, 2005). The 2006 automobile accident also attributed to Ms. Laughlin's further dependence on illegal drugs. It is important to note that Mr. Jackson knew of Ms. Laughlin's drug dependency from one of Ms. Laughlin's family members before the two had formally meet and afterwards exploited her addiction.

Ms. Laughlin had no relationship with her biological father until the age of 12 and as a minor was sexually abused by her mother's ex-husband. Furthermore, she also witnessed her best friend die from a drug overdose. Ms. Laughlin was placed in the legal care of the State of Tennessee Department of Children's Services at age 16 and remained there until she reached 18 years of age. Ms. Laughlin was a disadvantaged youth, a victim of abuse, and lacked any type of proper guidance, which should be factors for departure granted under *Booker*. *United Stares v. McBride*, 511 F. 3d 1293 (11th Cir. 2007).

Ms. Laughlin is remorseful for her involvement in the kidnaping of the minor child, D.K.B. Although Ms. Laughlin's drug addiction is a contributing factor to her involvement in the kidnaping, it must also be noted that she suffered threats against the lives of herself and her son, but also

suffered substantial physical and mental abuse at the hands of Mr. Jackson. Therefore, Ms. Laughlin was remorseful and affected by collateral consequences which would warrant a departure from the applicable guidelines. *United States v. Pauley*, 511 F. 3d 468 (4th Cir. 2007).

Moreover, Mrs. Laughlin's obligation to her minor child places her in a position to ask this Honorable Court for as much mercy as may be allowed.

**(2)  the need for the sentence imposed -**

**(A) to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense;**

**(B) to afford adequate deterrence to criminal conduct;**

**( C) to protect the public from further crimes of the defendant; and**

**(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;**

Ms. Laughlin acknowledges the crime for which she has plead guilty may require a period of incarceration to achieve respect for the law, just punishment, and adequate deterrence. As for any sentence imposed providing adequate deterrence to criminal conduct and protecting the public from further crimes, Ms. Laughlin wishes to reserve her argument due to the explicit and graphic nature of her testimony. However, Ms. Laughlin requests this Honorable Court sentence her as far below the guideline range as reasonably possible and pursuant to the filing of a motion by the United States of America and in accordance with 18 U.S.C. Section 3553(e) and U.S.S.G., Section 5K1.1, under all sentencing factors, including the opportunity for rehabilitation. Moreover, Ms. Laughlin would like the opportunity to participate in available institutional vocational training (business

management), be provided with medical care for her medical issues, and receive extensive psychiatric counseling.

Also, Ms. Laughlin wishes to take part in any available drug education/rehabilitation program (specifically the Bureau of Prison's Residential Drug Abuse Treatment Program, 18 U.S.C. Section 3621) that would be available to her through the United States Bureau of Prisons. Furthermore, it is her understanding that it is the position of the United States that she be incarcerated for a period of time to ensure that she complete the program. *United States v. Grant*, 567 F. 3d 776 (6th Cir. 2009).

Ms. Laughlin respectfully avers that she has given a brief, but good faith, demonstration of her amenability at rehabilitation based on her behavior during investigation, her cooperation with government agents during the trial of Mr. Jackson, and her testimony against Mr. Jackson in his trial before this Honorable Court.

Defendant respectfully asks this Honorable Court to recommend incarceration at the federal facility in Manchester, Kentucky, or similar facility, with a medical facility, psychiatric facility, and drug abuse treatment and rehabilitation program, all of which would assist Defendant in re-entering society with a greater ability to be a productive member.

**(3)    the kinds of sentences available;**

Ms. Laughlin is aware that even if the United States of America files the appropriate Motion for Departure 18 U.S.C. Section 3553(e) and/or USSG. Section 5K1.1, the departure recommended by the Government may not adequately reflect the defendant's substantial assistance in Mr. Jackson's prosecution.    However, Ms. Laughlin respectfully asks this Honorable Court to consider Defendant's guilty plea, acceptance of responsibility; poor physical health, and need for medical and substance abuse treatment, and reasonable future opportunity to apply her skills toward the

support of her son, as well as the other departure factors previously addresses when establishing this sentence.

**(4)    the kinds of sentence and the sentencing range established for -**

**(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines;**

All issues have been previously addressed by the defendant.

**(5)    any pertinent policy statement;**

Since *Booker* and *Rita* made the Sentencing Guidelines advisory, the amendments to USSG. Section 5K2.0, effective April 30, 2003 (Feeney Amendment to PROTECT Act) disallowing cases involving kidnaping from departure consideration, there are no policy statement issues pending before this Honorable Court.

**(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;**

Although there may be many defendants who have similar criminal records as Ms. Laughlin, her participation in the kidnaping as a whole was very particular to the situation that she was involved with Mr. Jackson. Therefore, to grant Ms. Laughlin a departure which may be substantially lower than other defendants convicted of the same crime would be warranted.

**(7)    the need to provide restitution to any victims of the offense.**

Ms. Laughlin is not currently aware of any restitution requested by The United States of America as it pertains to any victims of the offense.

**The overriding principle and basic mandate of § 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the four purposes of sentencing (as restated in § 3553(a)(2)):**

**(a) retribution (to reflect the seriousness of the offense, to promote respect for the law, and to provide "just punishment");**

**(b) deterrence;**

**( c) incapacitation ("to protect the public from further crimes"); and**

**(d) rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").**

Ms. Laughlin does not currently seem to pose a risk of recidivism. As referenced earlier, Ms. Laughlin's past criminal offenses were minor and non-violent and committed when the defendant was at a young age. *United States v. Prisel*, 316 Fed. App'x 377 (6th Cir. 2008). Also, given the physical and psychological abuse suffered by Ms. Laughlin at the hands of Mr. Jackson, she has already been punished by collateral consequences. *United States v. Pauley*, 511 F. 3d 468 (4th Cir. 2007). Furthermore, Ms. Laughlin has suffered extraordinary punishment due to the action of Mr. Jackson which are not contemplated by the Guidelines. *United States v. Clough*, 360 F. 3d 967 (9th Cir. 2004). As for the issues of deterrence, incapacitation, and rehabilitation, those issues have been previously addressed.

CONCLUSION

For all of the above reasons, Ms. Laughlin would ask this Honorable Court for a sentence under the new sentencing procedures set forth in *Booker* to an sentence that would adequately reflect the factors as set forth in 18 U.S.C. Section 3553(a), 3553(e), and U.S.S.G. Section 5K1.1.

Respectfully submitted,

By: /s/ Wayne R. Stambaugh
Wayne R. Stambaugh
BPR#021011
Attorney for Defendant
P. O. Box 1896
Morristown, TN 37816
(423) 586-8110

Certificate of Service

_____I hereby certify that on May 25, 2011, a copy of the foregoing Sentencing Memorandum was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U. S. Mail. Parties may access this filing through the Court's electronic filing system.

s/ Wayne R. Stambaugh